# United States Bankruptcy Court
## District of Massachusetts

| | |
|---|---|
| In re:<br><br>John O. Eze<br><br>Debtor | Chapter 13<br>Case No. 14-12128 |
| John O. Eze,<br><br>Plaintiff,<br>v.<br><br>Endeavor Capital Funding, LLC,<br>f/k/a Capital Trust Funding, LLC; and<br>Russell Peck, Jr., Esq.,<br><br>Defendant | Adversary Proceeding No.<br><br><br>JURY TRIAL REQUESTED |

## VERIFIED COMPLAINT

John O. Eze complaints of the defendants, as follows:

### PARTIES AND JURISDICTION

1. John O. Eze is an individual presently living in Dorchester, Massachusetts. He is the debtor in the above captioned bankruptcy case.
2. Endeavor Capital Funding, LLC ("Endeavor"), is a Massachusetts domestic limited liability company. Upon information and belief, the resident agent is Kurt G. Stenhouse, who has an office at 404 South Huntington Avenue; Boston, MA.
3. Upon information and belief, Russell Peck, Jr., is an attorney licensed to practice in Massachusetts, and has an office in Braintree, Massachusetts.
4. This court has jurisdiction of this complaint pursuant to 28 USC §157 and the order of reference from the District Court. It is a core proceeding pursuant to 28 USC §157(b)(2)(O). Eze consents to the entry of final judgment by this court to the extent constitutionally permissible.
5. Venue is proper in this court pursuant to 28 USC §1408 because Eze is the debtor in the underlying bankruptcy case and lives in this judicial district. Venue of this proceeding is proper pursuant to 28 USC §1409 as it is related to the underlying bankruptcy case.

### FACTUAL ALLEGATIONS

6. This action relates to Eze's home at 30 Topliff Street, Dorchester, MA.
7. The following entries in the records of the Registry of Deeds indicate how Eze acquired the property and granted mortgages to Endeavor:

| Date | Book | Page | Description |
|---|---|---|---|
| 11/5/07 | 42688 | 189 | Deed Jose Diaz to Eze, subject to mortgage |

JE

| Date | Book | Page | Description |
|---|---|---|---|
| 8/14/09 | 45373 | 3 | Foreclosure deed (First Horizon/Diaz) |
| 8/31/11 | 48334 | 28 | Deed First Horizon to Eze |
| 8/31/11 | 48334 | 30 | Deed Eze to Urban Gear Outfitters, LLC |
| 8/31/11 | 48334 | 32 | Mortgage Urban Gear Outfitters, LLC to Endeavor |
| 8/31/11 | 48334 | 53 | Assignment of rents |
| 8/31/11 | 48334 | 59 | Assignment 2 of leases |
| 6/5/12 | 49623 | 105 | Deed Urban Gear back to Eze |
| 6/5/12 | 49623 | 107 | Mortgage by Eze to Endeavor |
| 6/5/12 | 49623 | 121 | Conditional assignment of rentals |
| 6/5/12 | 49623 | 127 | Assignment 2 of leases |
| 6/5/12 | 49623 | 132 | Release of Security Docs 32, 53, 59 above |
| 4/23/14 | 52887 | 326 | Affidavit pursuant to MGL Ch. 244 §34B |

8. As the foregoing shows, Eze first acquired an interest in the property in 2007 from Jose Diaz. Prior to acquiring the interest, Eze was a tenant of Diaz.
9. In 2009, First Horizon foreclosed the mortgage given by Diaz. Thereafter, Eze negotiated with First Horizon about buying the property.
10. In 2010, First Horizon Home Loans Association foreclosed on the subject property but could not record the foreclosure deed because the court had determined that the bank conducted the sale in violation of a court order against the sale.
11. While the matter was in litigation in Suffolk Superior Court, as Eze and the mortgage holder sought loan modification with the bank, First Horizon quickly sought eviction proceedings against Mr Eze (it had become common practice among banks to attempt to evict homeowners upon foreclosure).
12. Eze had been self-employed at the time and had little or no credit history at best.
13. In a mediation held in 2011, Eze was given until the end of August, 2011, to obtain financing to purchase the subject property or vacate the premises. During the mediation, the bank offered him $5,000.00 towards the purchase of the property should he obtain financing, or to use same to relocate to another housing.
14. Eze learned about Endeavor Capital through a carpenter friend who in turn introduced Eze to an individual named Patrick who claimed to have done business with Endeavor.
15. Eze first spoke with the representative of Endeavor, Nadia, about June or so of 2011, while Eze was in eviction proceedings.
16. During the numerous conversations Eze had with Nadia, she guided him on how to navigate the eviction hurdles. She advised Eze on such things as how to obtain continuances in order to get the necessary financing paperwork. In short, Nadia advised Eze that Endeavor had worked with numerous homeowners who faced foreclosure and eviction and had helped them obtain financing within fourteen days.
17. Because of those conversations, Endeavor knew that the property was Eze's home and that he intended to continue to live there.
18. Prior to closing on the first loan, Eze was never asked how much income he made, what kind of occupation he had or whether he could afford the payments.

Prior litigation
19. The first predatory loan suit against Endeavor was filed at Suffolk Superior Court in January of 2012. Eze's counsel in that matter (Russell Peck, Jr.) inexplicably allowed the

suit to be dismissed with prejudice even though counsel knew or should have known that it was likely that Endeavor would not keep its own bargain. A logical inference can be made that Eze's prior counsel was in collusion with Endeavor and their counsel, Rosemary Traini.

20. In a deposition of March 12, 2012, Eze was asked where he lived, and he stated that he was living at the Topliff Street property.
21. Prior to commencing the present Adversary Proceeding, attorney Peck was asked to produce copy of the settlement agreement and the terms and conditions thereof, but failed or was unable to do so. Eze does not have a copy, himself.
22. Attorney Peck was paid $5,000.00 attorney's fees by Endeavor Capital but the terms of the new loan, which is clearly unlawful, puts into question not only the issue of effective representation but whether attorney Peck and Endeavor Capital had engaged in fraud and that the payment of his legal fees, which ordinarily would be paid by the client (Eze), was used to facilitate that fraud.
23. Because attorney Peck professed to practice in real estate transactions and mortgage loans, he knew or should have known that the note he advised Eze to sign was against his client's best interest.

Attorney Peck's Conflict Of Interest

24. Statements made to Eze by attorney Peck and the actions taken by him on numerous occasions compel an inference of collusion between attorney Peck and Endeavor Capital.
25. With regard to the Urban Gear Outfitters business, a dispute arose with the landlord of the business premises, resulting in the landlord (James Conroy) commencing eviction proceedings in the Dorchester District Court. Eze retained attorney Peck to represent him on that matter, as well.
26. The eviction litigation was on-going at approximately the same time as the Superior Court litigation against Endeavor.
27. On or about June 5th, 2010, at a mediation hearing at the Brighton District Court regarding the eviction, attorney Peck forced Eze to sign a settlement agreement which attorney Peck knew or had reason to know was against his client's interest. Attorney Peck stated, in essence, "You settle this case right now or I will file a notice of withdrawal which I have here on my hand ... l will not take you to a you to a jury trial because you cannot afford to pay me."
28. Attorney Peck further stated, in essence: "You can mess with your landlord but you won't mess with Endeavor Capital. Wait until you get evicted and cannot pay Endeavor their money." Attorney Peck's comments were prophetic. Attorney Peck then caused Eze to sign a settlement agreement which counsel knew Eze's landlord would not abide by. Consequently, Eze was evicted and not only lost his lease but his entire store inventory auctioned off.
29. Dorchester Housing Court records will disclose that Attorney Peck filed a motion to withdraw as counsel with the Dorchester District Court right after the settlement mediation at the Brighton District Court.
30. On one occasion when Eze visited his attorney's office in Braintree to discuss the case against Endeavor, Attorney Peck was on the phone with Rosemary Traini, attorney for Endeavor Capital. Eze, while at Attorney Peck's office, listened to the conversation

3

between Attorney Peck and Attorney Traini because Attorney Peck had the phone on a speaker. Eze heard Attorney Traini ask Attorney Peck, in essence: "Is he in your office right now?" to which Attorney Peck responded "He is right in front of me". Attorney Traini then told Attorney Peck to "Take the phone off the speaker."

31. Later, Attorney Peck complained and lamented he knew Endeavor Capital was not going to make payments to workers or honor the settlement agreement, and that Endeavor was just trying to buy time until the "six months" term of the loan runs out. Peck made the statement when Eze and his plastering contractor went to pick up a check from Attorney Peck as a loan from Peck's office for the contractor's materials. Check was for $2,500.00

32. On numerous occasions after the second loan was executed, Eze asked Attorney Peck to ask Endeavor to make payments to workers and provide funding for materials, but to no avail. Attorney Peck would respond to Eze by stating he would send emails to Attorney Traini, but nothing came out of it.

33. Because Endeavor had paid him $5,000 and also had reason to know that it was more likely than not that Endeavor would not comply with the Superior Court settlement, Attorney Peck forced Eze to settle in the eviction action because Attorney Peck knew that Eze would not be able to pay his fees for conducting a jury trial, rather than based on the merits of Eze's defense to eviction, which resulted in Eze losing his business and inventory.

The original purchase of the property and the refinancing

34. The basic facts of Eze's purchase of the property are set forth in paragraphs 7 through 15, above, and are supplemented by the following allegations.
35. In April, 2011, Eze had personally signed a lease for commercial space at 264 Bowdoin Street, Dorchester. The landlord was James Conroy. In November, 2011, Eze opened the business, which he called Urban Gear Outfitters.
36. To finance the purchase of the Topliff Street property, which also took place in 2011, Eze sought a mortgage loan from conventional lenders, but was not successful as he did not qualify.
37. Eventually he heard about Endeavor Capital, and applied for financing. Until shortly before closing on the loan, Eze believed that he would be borrowing individually, and the approval letter issued by Endeavor was in his name, individually.
38. However, shortly before the closing, Endeavor told Eze that it would form a LLC and make the loan to the LLC. This is because Endeavor apparently only deals with commercial loans, and is an asset-based, "hard money" lender, meaning that it makes loans based on the strength or value of collateral, rather than on the financial condition, or ability to pay, of the borrower. Eze had no choice in the matter if he wished to obtain the loan.
39. During a hearing in this court in the underlying bankruptcy case, counsel for Endeavor Capital admitted that Endeavor makes its loans based on the value of the property, not on the borrower's ability to pay. This is precisely how this loan was made to Eze; Endeavor never asked Eze about his employment or income.
40. Endeavor never explained the significance of forming the LLC or that doing so would permit Endeavor to evade Massachusetts laws as regards foreclosure of residential home mortgages.

4

41. At the closing in 2011, he was presented with all of the documents necessary to form an LLC, known as Urban Gear Outfitters, LLC, and to effect the conveyances of the properties to the LLC. The documents were prepared by Endeavor's attorney, as Eze has no legal training and could neither prepare such documents nor fully understand what he was being told to do. Until the closing, he was unaware that title to the property would be in the name of the LLC. This was because he was not given access to the papers prior to the closing. The papers included an "Occupancy Statement" which indicated that the property was "investment property" and that Eze did not intend to live in the property. Endeavor knew that this was a false statement but forced Eze to sign it anyway if he wanted the loan, leaving Eze with no choice.
42. The documents forming the LLC were filed with the Secretary of State on the same day as the closing.
43. The principal amount of the loan stated in the Note was $215,000, and it had a six-month term, which Eze believed was supposed to be renewable. However, the purchase price (from First Horizon) was only $200,000. The difference apparently was points, pre-paid interest and/or other fees and charges that Eze believes were excessive and/or illegal.
44. The note also provided that in the event of any default, the interest rate would become 24% (twenty-four percent). In addition, a late charge of 5% would be assessed if payments were not received on the first of the month.
45. The borrower on the Promissory Note was Urban Gear Outfitters LLC, instead of John Eze, individually.
46. The purpose of the loan was to purchase the property from First Horizon, which is a three-family property, so that Eze could continue to live in one unit and rent out the other two units.
47. When the six-month term of the loan ended, Endeavor commenced foreclosure and did not renew the loan.
48. He attempted to negotiate with representatives of Endeavor and to find other financing, but neither effort was successful.
49. In an effort to avoid foreclosure, Eze contacted an attorney in Quincy, MA, (attorney Russell Peck, Jr.) and an action was commenced in Superior Court in 2012. Eventually, a settlement was reached and the action was dismissed. Attorney Peck never gave Eze a copy of the settlement agreement.
50. Eze believed that under the settlement, in essence, the property would be conveyed to Eze, individually, and the loan rewritten in Eze's name. The 2012 mortgage was in the principal amount of $272,575 and a term of 180 days. This refinancing paid off the prior mortgage and was supposed to provide Eze with approximately $35,000 additional so that he could do repairs and renovations to the property. Apparently because of the additional amount, the Promissory Note was labeled as a "Construction Mortgage and Security Agreement", even though the property is residential and was Eze's home, and did not require "construction" but renovation and repair.
51. The terms of the mortgage provided that Eze would commence work on the property within 15 days, and Endeavor would advance funds to pay contractors as work progressed.
52. Eze complied with his obligations, but Endeavor did not properly or promptly advance funds, so the repair work stopped since Eze could not pay contractors. Eze believes that

5

Endeavor never intended to fully fund the loan, but instead intended to manipulate the situation so that it could foreclose and obtain the property at a bargain price.
53. Notwithstanding Endeavor's failure to comply with its obligations and Eze's attempts to get Endeavor to comply with its obligations, Endeavor failed or refused to do so and commenced foreclosure again.
54. Foreclosure was avoided by filing the present bankruptcy case.

### Count I - Unconsionability
(Endeavor Capital)

55. All of the foregoing paragraphs are incorporated herein by reference.
56. Although Eze is reasonably well-educated, he is unsophisticated in financial matters, and thus reposed his trust in Endeavor not to mislead or defraud him in the loan transaction.
57. In the transaction, Endeavor was in a superior bargaining position.
58. Consequently, Eze was misled and deceived in 2011 into agreeing to an unaffordable mortgage loan that was doomed to foreclosure from the start.
59. The consideration for the loan included provisions for a default interest rate of 24% and late charges of 5%, as well as the additional $15,000 above the purchase price.
60. The default rate is about ten times the usual prevailing interest rate for home loans and is usurious and therefore unconscionable.
61. Charging a default interest rate plus a late charge of 5% is also usurious, and is unfair, predatory and unconscionable. In addition, 5% exceeds the maximum late charge permitted by Massachusetts law.
62. These provisions in the promissory note and/or mortgage resulted in oppression and unfair surprise to Eze, particularly since he was under pressure to close both from the seller (First Horizon) and Endeavor, and the documents were not provided to him until the closing.
63. Endeavor's actions resulted in damage to Eze.

### Count II – Borrower's Interest Act
(Endeavor Capital)

64. All of the foregoing paragraphs are incorporated herein by reference.
65. The second loan transaction was a refinancing of the first transaction.
66. Massachusetts law, Ch.183 §28C, prohibits refinancing of a home loan unless the refinancing is in the borrower's interest.
67. The statute is narrowly construed and places the burden of demonstrating that the refinancing is in the borrower's interest on the lender.
68. Endeavor made no effort to determine whether the refinancing was in Eze's interests. In fact, for all of the reasons stated before, the transaction was not in Eze's interests since the new principal was greatly in excess of the original transaction; the payments turned out to be in excess of his ability to pay; the interest rate and other financial terms were usurious; and the short term of the loan was unreasonable in the circumstances.
69. Endeavor knew or should have known that the transaction was not in Eze's interests.

6

### Count III – Breach of Contract; Implied Covenant of Good Faith and Fair Dealing
(Endeavor Capital)

70. All of the foregoing paragraphs are incorporated herein by reference.
71. Under Massachusetts law, every contract includes an implied covenant of good faith and fair dealing.
72. The covenant prohibits any party to a contract from doing anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.
73. In addition, when performance under a contract is concurrent, one party cannot put the other party in default unless he is ready, willing and able to perform.
74. As stated above, performance by Eze and Endeavor under the contract was intended to be concurrent. That is, Eze would have renovation or repair work done, and Endeavor would advance funds to pay the cost, pursuant to the loan agreement.
75. As stated above, Eze attempted to perform his obligations, and did so to a substantial degree, but Endeavor failed to do so.
76. By failing to do so, Endeavor breached the implied covenant as well as the express terms of the loan contract.

### Count IV – Malpractice; Breach of Fiduciary Duty
(Russell Peck, Jr., Esq.)

77. All of the foregoing paragraphs are incorporated herein by reference.
78. Under Massachusetts law, attorneys have an obligation of due diligence and to act in the best interests of their clients.
79. An attorney commits legal malpractice when the advice given is not in the client's best interests and/or is in the attorney's interest instead; puts the client in a disadvantageous position; and/or fails to obtain a result that could have been obtained through more effective or diligent representation.
80. The facts stated herein concerning attorney Peck's representation, particularly paragraphs 20 through 26, indicate that attorney Peck did not act in Eze's best interests or with appropriate diligence because it left Eze worse off than before the representation was undertaken.

### Count V – Intentional Infliction of Emotional Distress
(Endeavor)

81. All of the foregoing paragraphs are incorporated herein by reference.
82. The actions of Endeavor as described herein caused Eze to suffer severe emotional distress. By failing to pay contractors who worked on the property, Endeavor knowingly caused Eze to endure more than two years of harassment, bodily assault and injury threats; illegal dumping of garbage on the property that has cost Eze more than $8000.00 in citations from the city's inspectional services; has caused Eze to endure more than three years of sleeplessness that has already exposed Eze to serious medical problems generally associated with prolonged exposure to stressful conditions.
83. The bodily assault and injury included an assault on December 6, 2014, on an MBTA bus by one of the workers that Eze could not pay promptly when Endeavor refused to comply

with its obligations to fund the repairs. Although the worker was actually paid in 2012, the worker still harbored a grudge because of the delay in paying him.

84. Eze has now been made a laughing stock in the entire neighborhood, and his house is now a dumping ground for hateful neighbors and contractors who were never paid and who will continue to send people out to trash Eze's property even if they eventually do get paid. By engineering Eze's ex-lawyer (attorney Peck) to cause Eze to lose his store, which would have been a substantial source of income, Endeavor has clearly succeeded in ruining Eze and forcing him into bankruptcy. Because a bankruptcy remains on an individual's credit report for up to ten years, the damage to Eze is long-lasting.

85. Endeavor knew or should have known that its actions and failures to act would result in emotional distress, and were extreme and outrageous in that they were undertaken with no concern for, or recognition of, the potential consequences of its actions or failures to act.

## CONCLUSION

The foregoing indicates that Eze has suffered substantial damage at the hands of both Endeavor and attorney Peck. Eze therefore requests the following relief;

1. That the mortgage be declared void and unenforceable, and that Endeavor therefore be enjoined from foreclosure;
2. That the court determine the correct amount that Endeavor actually loaned to Eze;
3. That said amount be deemed an unsecured claim;
4. That said amount be reduced by any damages awarded by the court (or jury, if a jury trial is allowed);
5. That the court grant such other or different relief as is meet and just.

Respectfully submitted,
John O. Eze,
By his attorney,

/s/ David G. Baker

David G. Baker, Esq.
236 Huntington Avenue Room 306
Boston, MA 02115
BBO# 634889
617-340-3680

## VERIFICATION

The undersigned states under pains and penalties of perjury that he is the plaintiff in the within complaint; that he has read the complaint in its entirety; and that the facts and circumstances alleged therein are true and correct to the best of his recollection, information and belief.

_____
John O. Eze